# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAN MORALES, RICHARD CONTRERAS, and JUAN GONZALES,<br><br>Plaintiffs,<br><br>v.<br><br>JEROME'S FURNITURE WAREHOUSE, DIAKON LOGISTICS (DELAWARE) INC.,<br><br>Defendants. | CASE NO. 18cv1662 JM(AGS)<br><br>ORDER GRANTING MOTION TO REMAND; DENYING MOTION FOR SANCTIONS |

Plaintiffs Adan Morales, Richard Contreras, and Juan Gonzales ("Plaintiffs") move (1) to remand this wage and hour class action to the Superior Court of the State of California in and for the County of San Diego and (2) for the imposition of monetary sanctions based upon a perceived improvidently removed action. Diakon Logistics (Delaware) Inc. ("Diakon") opposes the motion. Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented appropriate for decision without oral argument. For the reasons set forth below, the court grants the motion to remand and denies the motion for sanctions.

## BACKGROUND

On June 16, 2018, Plaintiffs filed a Consolidated Class Action Complaint ("CCAC") in the Superior Court of the State of California, County of San Diego by alleging twelve state law wage and hour claims for relief: (1) misclassification of an
- 1 -    18cv1662

employee (Cal. Lab. Code §226.8); (2) failure to pay required wages (Cal Lab. Code §§200, et seq.); (3) failure to pay overtime premium pay (Cal. Lab. Code §1194); (4) failure to pay meal period premium pay (Cal. Lab. Code §512); (5) failure to pay rest break premium pay (Cal. Lab. Code §226.7); (6) recovery of waiting time penalties for failure to provide wages upon termination or discharge (Cal. Lab. Code §203); (7) California record-keeping provisions (Cal. Lab. Code §§226, 226.2, 1174, and 1175); (8) unauthorized deductions (Cal. Lab. Code §§221, 224); (9) failure to reimburse or indemnify expenses or losses incurred as a result of performing work duties (Cal. Lab. Code §2802); (10) violations of California's unfair competition laws (Cal. Bus. & Prof. Code §§17200, et seq.); (11) conversion; and (12) violations of the Private Attorney General Act ("PAGA") (Cal. Lab. Code §§2698, et seq.).

Plaintiffs bring this action on behalf of two classes. The Diakon Class is defined as "All current and former Drivers and Helpers who performed delivery related services for Diakon in California." The Jerome's Class is defined as "All current and former Drivers who performed delivery and related services for Jerome's in California." (CCAC ¶¶17, 18). The Jerome's Class is an alleged subclass of the Diakon Class.

Diakon operates a shipping, delivery, and logistics business that contracts with third-party companies, or "Independent Contract Carriers." Jerome's is one of Diakon's clients in California. Plaintiffs allege that Diakon managed its Delivery Drivers and Helpers either by (1) directly engaging them on a per-delivery basis or (2) contracting with subcontractors, frequently incorporated as LLCs or sole proprietorships. In either case, Diakon exercised significant control over directly employed Delivery Drivers and Helpers or their subcontractors. (CCAC ¶32-33).

Diakon's wrongful conduct allegedly includes misclassification of the Drivers and Helpers as independent contractors; requiring class members to wait up to six hours before being sent home without a delivery or pay; providing inadequate meal and rest periods; failing to pay minimum wage and overtime; maintaining inadequate wage statements or time records; and making unauthorized deductions for business expenses.

Plaintiffs allege that Diakon provided a fleet of Drivers and Helpers to Jerome's. Jerome's payed Diakon a flat fee for each delivery made by Diakon. Prior to contracting with Diakon, "Jerome's performed all of the delivery and assembly itself, using its own employees." (CCAC ¶45). Plaintiffs seek to hold Jerome's vicariously liable as a "client employer," within the meaning of Cal. Lab. Code §2810.3. (CCAC ¶47).

Procedurally, this matter is the combination of two putative class action lawsuits filed against Defendants in state court: one filed by Plaintiff Morales on June 12, 2017, and the other by Plaintiffs Contreras and Gonzales on September 7, 2017. The parties have conducted substantial discovery in these cases. On February 1, 2018, state court judge Richard E. L. Strauss ordered the two actions consolidated and the CCAC was served on Defendants on June 26, 2018. On July 20, 2018, Defendants removed the action based upon the Class Action Fairness Act ("CAFA"). 28 U.S.C. §1332(d).

## DISCUSSION

**Legal Standards**

The parties only dispute whether the amount in controversy satisfies CAFA's statutory minimum requirement of $5,000,000. 28 U.S.C. §1332(d)(2). Federal courts are courts of limited jurisdiction. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998) (quoting Ex Parte McCardle, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868)). Accordingly, federal courts are under a continuing duty to confirm their jurisdictional power and are "obliged to inquire sua sponte whenever a doubt arises as to [its] existence..." Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 278 (1977) (citations omitted).

A state court civil action may be removed to federal court if the district court had "original jurisdiction" over the matter. 28 U.S.C. §1441(a). Defendant, as the party

who invokes federal removal jurisdiction, has the burden of demonstrating the existence of federal jurisdiction. See Gaus v. Miles, Inc. 980 F.2d 564, 566 (9th Cir. 1992); B., Inc. v. Miller Brewing Co., 663 F.2d 545 (5th Cir. 1981). While doubts regarding removal jurisdiction are generally construed against Defendant, and in favor of remanding the case to state court, See Gaus, 980 F.2d at 566, there is "no antiremoval presumption [to] cases invoking CAFA" jurisdiction. Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S.Ct. 547, 554 (2014). Even after enactment of CAFA, the burden of demonstrating subject matter jurisdiction at the time the Notice of Removal is filed remains with Defendant. See Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 682-83 (9th Cir. 2006) (under CAFA, defendant retains the burden of establishing federal jurisdiction, including the amount in controversy).

Here, the CCAC does not allege an amount in controversy. Consequently, Diakon has the burden to show by a preponderance of the evidence that the amount in controversy is satisfied. See Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197 (9th Cir. 2015); 28 U.S.C. §1446(c)(2)(B) (removal is appropriate "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold). In satisfying this burden, the removing party must come forward with summary judgment type evidence. See Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997).

In order to determine the amount in controversy, the court follows Diakon's methodology and considers the number of class members and then damages calculations related to Plaintiffs' causes of action. Each is discussed in turn.

**The Number of Class Members**

To establish the number of Class Members, Diakon comes forward with the declaration of its chief financial officer, Douglas Turner, who declares that Diakon "investigated potential membership of the expanded class" definition at his direction and concludes that there are about 224 individuals who performed driving duties for Diakon. (First Turner Decl. ¶6, ECF 1-11). Mr. Turner also believes that for every

Driver there is one Helper to reach a total of 448 class members. (Id. ¶¶4, 7). The Second Turner Declaration identified that he personally instructed the accounting department to review the contracts with Independent Contractor Carriers ("ICCs") and Qualified Second Drivers (employed by ICCs) to, among other things, determine the identity of the potential class member individuals and the start and end dates of the contracts, if any. (Second Turner Decl. ¶¶4-11, ECF 21-2). Based upon this analysis, Mr. Turner concluded that there are a total of 224 individuals who "personally performed driving duties for one or more of Diakon Logistics clients in California from June 12, 2013 to the present." (Id. ¶12). As there is "typically at least one helper that works with each driver," there are 448 class members.

Despite substantial discovery conducted by the parties since June 2017, the factual record submitted by Plaintiffs sheds no light on the number of potential class members. Plaintiffs respond that Diakon has yet to produce in discovery the "employment records of drivers and helpers." (Reply at p.5:19-2).

For purposes of the present motion only, the court concludes that the Turner Declarations provisionally establish, by a preponderance of the evidence, that there are 448 class members, subject to future challenge as discovery progresses. As noted by Plaintiffs, Fed.R.Civ.P. 56(c)(4) requires that declarations be made on personal knowledge and set forth "admissible" evidence. The declarations of Mr. Turner are made on personal knowledge as Diakon's chief financial officer. The declarations also satisfy the foundational requirements of Fed.R.Evid. 104 and identify the accounting business records at issue, reflecting the identities of class members; the procedures implemented to determine the identity of potential class members; and the steps taken to ensure that class members are not double-counted. At this early stage in the proceeding, where Plaintiffs have yet to complete class related discovery, the court concludes by a preponderance of the evidence, based upon the current record submitted by the parties, that Diakon has provisionally established the number of class members. Further discovery will permit the court and parties to make more informed

determinations about the number of class members.[1]

In sum, for purposes of the present motion, Diakon preliminarily establishes that there are 448 class members.

**The Misclassification Claim**

Diakon represents that the CCAC "expressly seeks" an award of $25,000 per each allegedly misclassified individual, representing $11.2 million for 448 class members. The court rejects this damages calculation because PAGA claims, Cal. Lab. Code §2698 et seq., are not class actions claims, see Baumann v. Chase Inv. Servs. Corp, 747 F.3d 1117, 1124 (9th Cir. 2014), and "'the amount involved in the non-class claims cannot be used to satisfy the CAFA jurisdictional amount,' Yocupicio v. PAE Grp., LLC, 795 F.3d 1057, 1062 (9th Cir. 2015)." Santoyo v. Consol. Foundries, Inc., 2016 WL 5955851, *3 (2016). Accordingly, Diakon fails to show that the amount in controversy for misclassification penalties includes $11.2 million.

**Minimum Wage Claims**

Diakon represents that there is no amount in controversy with respect to this claim.

**Overtime Wage Claims**

In broad brush, Plaintiffs allege that they regularly worked in excess of eight hours in a workday and 40 hours in a week; and therefore they are entitled to overtime compensation. (CCAC ¶60). Based upon the deposition testimony of Plaintiff Morales, who testified that he regularly worked 20 hours of unpaid overtime each week, Diakon then assumes that each class member worked 20 uncompensated overtime hours each week for a period of about four years. Based upon this unsupported assumption, Diakon then concludes that class damages are $7.19 million.

---

[1] Plaintiffs contend that the Turner declarations lack foundation and constitute inadmissible hearsay because (1) the ICC reports are not attached to the declarations and (2) Mr. Turner fails to declare that he personally reviewed the ICC reports. The court rejects these objections. Submission of the ICC documents is not a foundational requirement for the admissibility of the Turner declarations and, additionally, the declarations were made upon personal knowledge.

In order to meet its evidentiary burden, Diakon must show some reasoned basis for its assumption that each class member worked 20 hours of uncompensated overtime each week for over four years (the class period). The information concerning employment/payment records is uniquely within the possession of Diakon. Notwithstanding, Diakon sheds no light on the number of overtime hours worked by class members. Diakon fails to articulate and support their conclusory assumption that all class members worked 20 hours of uncompensated overtime each week.[2] As Diakon's submissions fail to establish by a preponderance of the evidence that the amount in controversy for unpaid overtime wage claims is $7.9 million, the court does not include this amount in calculating the amount in controversy.

**Meal Period Premiums**

In his deposition, Plaintiff Morales was asked "What is your best estimate in a percentage from zero to a hundred that you did not take a lunch break?" (ECF 21-3 at 82, ln 11-12). Plaintiff Morales responded "one hundred percent." Based solely upon this question and response, Diakon assumes that each class member never took a meal break and, therefore, the total amount for Plaintiffs' meal break claim is $1,197,920.

As with the overtime wage claim, Diakon provides no analysis, or any evidence, to support its assumption that class members never took the mandated meal period. Diakon does not analyze the deposition testimony of the other class representatives, analyze its own records, or otherwise enlighten the court regarding evidentiary support for its assumptions.

**Rest Period Premiums**

In his deposition, Plaintiff Morales testified that he would only take a break if necessary, maybe once a day, but not more. Diakon then assumes that if Plaintiff Morales worked 12 hour days, he would be entitled to three rest breaks per day. Diakon then assumes that no class member received a rest period, and therefore

---

[2] The court notes that Diakon fails to analyze the overtime claim of either Plaintiff Contreras or Gonzalez.

concludes that total rest period claims are $1,197,920. Diakon's failure to articulate a reasoned analysis for its methodology, supported by evidence, constitutes a failure to meet its evidentiary burden on this motion to remand. That is particularly true in this case where the information concerning Drivers and Helpers is uniquely within the possession of Diakon and has been subject to discovery since June 2017.

**Inaccurate Wage Statements**

Labor Code §226(a) requires employers to provide each employee with "an accurate itemized [wage] statement in writing." The failure to provide a wage statement is subject to a maximum statutory penalty of $4,000. A one year statute of limitations applies to this claim. Lab. Code §226(e)(1); Civ. Proc. §340).

Diakon represents that "134 class members were engaged in contract [] for longer than 41 weeks." (Oppo. at p.12:7-8). Diakon then assumes a maximum statutory recovery of $4,000 for 134 class members for a total of $536,000. The difficulty with these representations is that Diakon fails to explain the relevance of the 134 class members with contracts exceeding 41 weeks. The time period identified in the Turner declarations for these 134 class members commences on June 12, 2013. (Turner Decl. ¶8). However, the one year statute of limitations reaches back in time to June 2016, not June 2013. Diakon's failure to articulate a reasoned analysis for its methodology, supported by evidence, constitutes a failure to meet its evidentiary burden on this motion to remand.

**Waiting Time Penalties**

Plaintiffs do not oppose Diakon's calculation for waiting time penalties in the amount of $691,200.

**Unauthorized Deductions**

In his deposition, Plaintiff Contreras testified that his weekly compensation had improper deductions of "approximately $50 - $100 due to refused products or damaged products." (Oppo. at p.12:26). Assuming that each class member had $50 wrongfully deducted each week throughout the class period, Diakon asserts an amount in

controversy of $1,497,400. Once again, Diakon fails to satisfy its evidentiary burden. Even though the information concerning alleged unauthorized deductions is uniquely within the possession of Diakon, it fails to show that a $50 unauthorized deduction is representative of the claims of all class members. Diakon's failure to articulate a reasoned analysis for its methodology, supported by evidence, constitutes a failure to meet its evidentiary burden on this motion to remand.

**Failure To Reimburse Business Expenses**

Plaintiffs do not dispute Diakon's calculation for failure to reimburse business expenses in the amount of $448,000. However, Plaintiffs dispute Diakon's assertions that Plaintiffs seek $8.01 million for unreimbursed mileage expenses. Diakon represents that Plaintiff Morales testified that "he drove an average of 200 miles per day for which he should have received reimbursement." (Oppo. at p.13:14-15). Diakon then assumes that each Driver class member is in the same position as Plaintiff Morales and, therefore, potential damages exceed $8 million. The court rejects this argument.

The evidentiary record demonstrates that Plaintiff Morales testified that he was provided with a gas card and did not pay for the gas used by the delivery truck, owned by an unidentified third party. (FinleyDecl. Exh. H at 43:12 - 44:18). As Plaintiff Morales does not have a claim for unreimbursed mileage expenses, Diakon fails to meet its evidentiary burden to show that the class has a claim for $8.01 million in unreimbursed business expenses.

**Attorney's Fees**

Diakon argues that Plaintiffs may also be entitled to an award of attorney's fees. Diakon cites Flores v. City of Westminster, 2014 LEXIS 200551, *38 (C.D. Cal. October 23, 2014), for the proposition that counsel in that case were awarded $3.28 million in attorney's fees. Diakon's failure to articulate a reasoned analysis for a proposed award of attorney's fees, supported by evidence, constitutes a failure to meet its evidentiary burden on this motion to remand.

# CONCLUSION

The court grants the motion to remand this action to San Diego Superior Court. Diakon's claimed amount in controversy, $32.51 million, is not supported by a preponderance of the evidence. The amount in controversy established by Diakon fails to satisfy the jurisdictional minimum required for the exercise of CAFA jurisdiction. The Clerk of Court is instructed to remand this action to the San Diego Superior Court.[3]

**IT IS SO ORDERED.**

DATED: January 23, 2019

Hon. Jeffrey T. Miller
United States District Judge

cc: All parties

---

[3] The court also denies Plaintiffs' request for sanctions pursuant to 28 U.S.C. §1447(c). That provision authorizes the court to award attorney's fees and costs "where the removing party lack[s] an objectively reasonable basis for seeking removal." Otay Land Co. v. United Enters., 672 F.3d 1152, 1157 (9th Cir. 2012). Here, in light of Plaintiff's various labor violation claims, potential statutory penalties at issue, and Plaintiffs' failure to identify an amount in controversy in the CCAC, Diakon had a reasonable basis to challenge the amount in controversy allegations. The fact that Diakon failed to carry its burden cannot serve as a basis for an award of fees.